UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH J. FINN,<br><br>               Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>               Defendant. | No. CV-13-3098-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 15, 17.) Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney Benjamin J. Groebner represents defendant. After reviewing the administrative record and briefs filed by the parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff Joseph J. Finn (plaintiff) protectively filed for disability insurance benefits (DIB) and supplemental security income (SSI) on June 1, 2010. (Tr. 189.) Plaintiff alleged an onset date of September 1, 2003.[1] (Tr. 51, 220.) Benefits were denied initially and on reconsideration. (Tr. 147, 152.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Marie Palachuk on April 18, 2012. (Tr. 49-91.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 78-84.) Medical experts Stephen Rubin, Ph.D., and Arthur Lorber, M.D., and vocational expert Daniel McKinney also testified. (Tr. 54-78, 84-90.) The ALJ denied benefits (Tr. 21-36) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

---

[1] At the hearing, plaintiff's counsel amended the alleged onset date to May 13, 2010. (Tr. 51.) However, the ALJ considered the original alleged onset date of September 1, 2003, although the earliest evidence of record is from March 2010. (Tr. 21, 283.)

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 37 years old at the time of the hearing. (Tr. 70.) He was kicked out of school for fighting before finishing his sophomore year. (Tr. 79.) He has work experience in construction and in bagging groceries, stocking shelves and cleaning up at a grocery store. (Tr. 85.) He alleged difficulty with both knees. (Tr. 62.) He limps and uses a brace on one knee and occasionally uses a cane. (Tr. 63.) He is constantly tired during the day due to sleep difficulties. (Tr. 67, 81.) He testified he was in special education throughout school. (Tr. 69.) He describes himself as a loner who stays to himself. (Tr. 82.) He has problems dealing with stress. (Tr. 81-82.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity since June 1, 2010, the application date. (Tr. 23.) At step two, the ALJ found plaintiff had the following severe impairments: degenerative arthritis in bilateral knees; chronic mild depression; and posttraumatic stress disorder. (Tr. 23.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 24.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he requires the ability to alternate between sitting and standing approximately every sixty minutes; he can stand or walk for no more than two hours in an eight-hour workday; he can occasionally use foot pedals bilaterally; he can occasionally climb ramps and stairs, stoop, crouch, but never balance, kneel, crawl or climb ladders rope or scaffolds; he should avoid unprotected heights; he can understand remember and carry out simple, routine, repetitive tasks or instructions; he can interact with the public no more than occasionally; he is limited to occasional, superficial (defined as not in close cooperation) interaction with coworkers and supervisors; he can maintain attention and concentration for two hour intervals between breaks on simple, routine, repetitive tasks; he should work in a structured, routine environment.

(Tr. 26-27). At step four, the ALJ found plaintiff is unable to perform any past relevant work. (Tr. 34.) At step five, after considering plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 35.) Thus, the ALJ concluded plaintiff was not under a disability as defined in the Social Security Act since June 1, 2010, the date the application was filed. (Tr. 36.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) failing to properly consider the medical expert opinion; (2) determining plaintiff's statements are inconsistent as part of the credibility finding; (3) rejecting the opinions of treating physicians and therapists; and (4) ignoring plaintiff's non-severe impairments in the RFC determination. (ECF No. 15 at 12-21.) Defendant argues the ALJ: (1) properly considered plaintiff's non-severe mental impairments; (2) provided legally sufficient reasons for finding plaintiff not credible; and (3) properly evaluated the medical evidence. (ECF No. 17 at 2-20.)

## DISCUSSION

**1.    Credibility**

Plaintiff argues the ALJ erred in the credibility findings. (ECF No. 15 at 15-16.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects

of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ found plaintiff's medical determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of the alleged symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment. (Tr. 27.) The ALJ analyzed plaintiff's physical and mental complaints separately and assigned "very little weight" to the physical complaints (Tr. 30) and found plaintiff's subjective mental complaints "simply are not credible." (Tr. 34.)

Plaintiff's sole credibility argument is that the ALJ improperly considered "certain inconsistencies" in the record. (ECF No. 15 at 15-16.) As part of the basis for the credibility finding, the ALJ cited inconsistent statements by plaintiff regarding the timing and reason he was kicked out of school and regarding childhood abuse by his parents. (Tr. 34.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Plaintiff acknowledges "the stories do vary," but wonders why it is unbelievable "that a father could take a child and then abuse the child." (ECF No. 15 at 15-16.) Plaintiff asserts his troubled past and troubled present demonstrate he is a victim of modern life for whom the Social Security Act "has special relevance." (ECF No. 15 at 16.)

Notwithstanding the fact that plaintiff failed to cite any persuasive legal authority or any evidence in the record supporting his argument, plaintiff's argument fails to address the substance of the ALJ's credibility finding. The ALJ cited a number of reasons supporting the credibility finding in addition to the two inconsistent statements mentioned in plaintiff's briefing, yet plaintiff points to no other error or improper interpretation of the evidence. (Tr. 28-33.) For example, the ALJ cited plaintiff's failure to seek treatment for his knee problems; his relatively mild symptoms; his failure to participate in physical therapy; inconsistencies in the physical medical evidence; lack of objective evidence; improved mental health symptoms with treatment; fantastic stories, exaggerations and assertions not supported by the record; and inconsistent statements about drug and alcohol use record as part of the basis for the negative credibility finding. (Tr. 28-33.) These factors are reasonably considered by the ALJ in assessing credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113 -1114 (9th Cir. 2012) (unexplained non-compliance with treatment reflects on a claimant's credibility); *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony); *Warre v. Comm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (an impairment that can be effectively controlled with treatment is not disabling); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. 416.929(c)(2) (medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding). For each reason, the ALJ cited supporting

evidence in the record. (Tr. 28-33.) Plaintiff's argument fails to address any of these reasons mentioned or the supporting evidence. These are clear and convincing reasons supported by substantial evidence.

Even if the ALJ misconstrued the evidence regarding plaintiff's childhood abuse (and the court is not so persuaded), the ALJ cited other clear and convincing reasons supported by substantial evidence which justify the negative credibility finding. As long as there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination, the error is harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). As a result, the error, if any, would be harmless.

**2.    Opinion Evidence**

Plaintiff argues the ALJ improperly considered the opinion of the medical expert, Dr. Rubin, as well as the opinions of Dr. Schultz, Wendy Baker ARNP, Lindsey Vaagan MSW, Edward Liu ARNP, and Dr. Ho. (ECF No. 15 at 13-15, 16-19.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons

that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

     **a.**    **Psychological Expert - Dr. Rubin**

Plaintiff argues the ALJ erroneously rejected the opinion of the psychological medical expert, Dr. Rubin, and failed to apply his opinion to the RFC. (ECF No. 15 at 13-15.) Dr. Rubin opined that plaintiff has an organic mental disorder due to an accident or learning disabilities; chronic depression, moderate to mild; and posttraumatic stress disorder. (Tr. 71.) He also testified there is evidence of antisocial characteristics but plaintiff does not meet the personality disorder diagnosis, and there is question about substance addiction disorder. (Tr. 71.) He testified that plaintiff could understand, remember and carry out simple, routine, and repetitive tasks; he would be able to maintain concentration on simple, routine, repetitive tasks for two-hour intervals; he would be able to have occasional interaction with the public, coworkers and supervisors; she should have limited close interaction with the public, coworkers or the public; and he should be in a more routine structured situation with a lot of repetitive action. (Tr. 72-73.)

Dr. Rubin also testified that plaintiff's ability to understand and reason is at the borderline level, meaning he would have difficulty with detailed jobs and complicated learning. (Tr. 77.) Dr. Rubin opined plaintiff would not handle stress well at all, and that if plaintiff were put in a competitive situation with the normal stresses of an eight-hour job, his prognosis is quite poor. (Tr. 77-78.) Dr. Rubin indicated a sheltered or "friendly environment" that would allow

plaintiff to take breaks would be necessary. (Tr. 77.) Dr. Rubin also indication plaintiff's motivation would be required, and he was "not sure about that motivation." (Tr. 77.)

The ALJ assigned only "some weight" to Dr. Rubin's opinion. (Tr. 33.) The ALJ's reason for assigning less weight is "it is difficult to give significant weight since the claimant's cognitive symptoms and substance abuse issues are uncertain, as is also the case with all the psychological opinions." (Tr. 33.) Dr. Rubin's testimony is equivocal regarding cognitive symptoms and substance abuse. He stated, "There's a lack of clear evidence of cognitive functioning. He appears to have had difficulty in school and may have some learning disability or borderline intellectual functioning although there's not a lot of documentation for that." (Tr. 70-71.) Dr. Rubin testified, "I think there's a question mark on 12.09, substance addiction disorder."[2] (Tr. 71.) He also stated he was "in a bit of a quandary" about plaintiff's reports of drug use since there are no confirming reports about it from other institutions. (Tr. 75-76.) Dr. Rubin suspected plaintiff has problems with memory and dates, but did not see evidence supporting that. (Tr. 77.) He pointed out there is not a lot of cognitive testing. (Tr. 77.)

In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713

---

[2] The ALJ states Dr. Rubin opined that with regard to organic mental disorders he "would put a question mark by that." (Tr. 33.) Although the record reflects Dr. Rubin stated, "So I would suggest a question mark on 12.02 [organic disorders]," context suggests Dr. Rubin actually meant to refer to 12.09, substance addiction disorders. (Tr. 71-72.) Dr. Rubin stated:

> I think there's a question mark on 12.09, substance addiction disorder. As we just heard, he doesn't think he was ever dependent on any polysubstance illegal drugs. Though he has told that to different people, I don't see any evidence of going through any drug or alcohol treatment so I have a question mark on 12.09. So I would suggest a question mark on 12.02.

(Tr. 71-72.) Dr. Rubin then went on to discuss organic mental disorders and said in the next sentence, "So the evidence does suggest organic mental disorders." Previously, Dr. Rubin stated "he probably does have a 12.02 . . . organic mental disorder" and "I do think he has a 12.02, organic mental disorder." (Tr. 71.) So it appears more likely that Dr. Rubin intended to "put a question mark" next to the 12.09 diagnosis rather than 12.02.

F.2d 441, 443 (9th Cir.1983). The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. 404.1519a. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998). In this case, the medical expert suspected a possible cognitive disorder and noted the lack of evidence and testing regarding cognitive functioning. Dr. Rubin testified, "I wish I had more evidence for that, but I suspect it's there and I would limit different jobs that he could understand and do on a regular basis." (Tr. 77-78.) The ALJ did not address or reject this testimony and therefore there is an ambiguity in the record. As a result, the ALJ should have developed the record with respect to plaintiff's cognitive functioning. Thus, the matter must be remanded for cognitive testing and further development of the psychological record. To the extent that additional evidence regarding polysubstance abuse is developed on remand, the ALJ should consider whether a drug and alcohol abuse analysis is appropriate. *See Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Notwithstanding the ambiguity regarding organic mental disorders and polysubstance abuse, the ALJ included most of the limitations identified by Dr. Rubin in the RFC. (Tr. 27.) The ALJ gave weight to the limitation on occasional public interaction; the limitation to occasional superficial interaction with coworkers and supervisors; the ability to maintain attention and concentration for two hour intervals between breaks on simple, routine, repetitive tasks; and the necessity of a structured, routine environment. (Tr. 27.) However, the ALJ did not include a limitation regarding plaintiff's ability to respond to the stress of a normal work week or a "friendly" or sheltered work environment.

Although the ALJ gave Dr. Rubin's opinion only "some weight," the ALJ did not explain why Dr. Rubin's opinion about the ability to tolerate the stress of an eight-hour a day work week or sheltered work were not included in the RFC. Furthermore, those limitations do not appear to be specifically tied to the ambiguities identified by the ALJ regarding the diagnoses of organic mental disorder and polysubstance abuse. The vocational expert testified that a significant interference or a marked limitation in the ability to respond appropriately to and tolerate the

pressure and expectations of a normal work setting would preclude work a person's ability to in a normal, competitive work setting. (Tr. 89.) Furthermore, sheltered work is not the same as competitive work. *See Thompson v. Schweiker*, 665 F.2d 936 (9th Cir. 1982). However, it is not clear that these limitations are supported by other evidence in the record.[3] As a result, Dr. Rubin's testimony should be reconsidered on remand and the ALJ should determine whether the evidence supports a limitation regarding the ability to respond to the stress of a normal work week and whether sheltered work is necessary.

Plaintiff argues that although they are non-severe impairments, limitations resulting from organic mental disorder and history of polysubstance abuse should have been included in the RFC. (ECF No. 15 at 19.) The ALJ determined there is not enough evidence to support those conditions and therefore found those impairments are non-severe. (Tr. 24.) This argument is moot since the matter is remanded for further development of the record regarding plaintiff's cognitive functioning and polysubstance abuse.

### b.     Other Psychological Opinion Evidence

Without citing any legal authority, plaintiff argues that the ALJ should have given more weight to consultative experts over the opinions of those who did not treat plaintiff. (ECF No. 15 at 16.) Plaintiff asserts the ALJ "almost completely ignores the opinions of doctors and specialists who had the opportunity to assess Claimant's condition first hand." (ECF No. 15 at 16-17.) In support, plaintiff points out that Dr. Schultz assessed a GAF score of 41, Ms. Baker assessed a GAF score of 47, Ms. Vaagan assessed a GAF score of 47, and Dr. Rubin assessed a GAF score of 50. (Tr. 74, 299, 313, 328.) Plaintiff asserts the ALJ was "all too willing to ignore these opinions" in concluding plaintiff is not disabled. (ECF No. 17 at 15.)

First, the ALJ noted that GAF scores are "not a legal tool and should not be relied on as indicative of the claimant's abilities.' (Tr. 31.) Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 598 (9th Cir. 1999). Furthermore, the Commissioner has explicitly disavowed use of GAF scores

---

[3] The only other evidence suggestive of a limitation on the ability to handle the stress of a normal workweek is the opinion of Lindsey Vaagan, MSW, which was reasonably given less weight by the ALJ as discussed *infra*.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12

as indicators of disability. "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing." 65 Fed. Reg. 50746-01, 50765 (August 21, 2000). Moreover, the GAF scale is no longer included in the DSM–V. As a result, GAF scores are of little evidentiary value and the ALJ appropriately accorded little weight to them.

Additionally, the ALJ pointed out that the severity of symptoms and functioning that are typical components of a GAF score are questionable due to plaintiff's lack of credibility. (Tr. 31.) The ALJ noted Dr. Rubin testified that plaintiff's general ability to function makes Dr. Schultz' assessment of a GAF score of 41 questionable. (Tr. 32, 74.) An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's report of daily activities. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir. 1999). Further, the ALJ pointed out the GAF scores assessed by Ms. Vaagan and Ms. Baker are questionable because plaintiff's statements which are the primary bases for the GAF scores are not reliable. (Tr. 31.) These reasons are supported by the evidence and are a reasonable basis for rejecting the GAF scores.

Second, the ALJ did not "ignore" any of the opinions cited by plaintiff. The ALJ discussed and assigned weight each opinion and gave reasons for the weight assigned. (Tr. 31-33.) Plaintiff does not address any of the reasons mentioned by the ALJ in assessing the opinions or point to any error of law or reasoning in the ALJ's findings. The ALJ assigned minimal weight to Dr. Schultz' opinion because it was based on plaintiff's inaccurate report of personal history and incredible facts. (Tr. 32.) Plaintiff told Dr. Schulz he had been in a motor vehicle accident in his 20's and was knocked unconscious and comatose for a year, although there is no medical evidence supporting this incident in the record. (Tr. 31, 311.) He stated he had to re-learn to walk and talk, and that he had seizures before he started having migraines. (Tr. 311.) He reported drinking alcohol at six years old and using methamphetamines when he was 10 years old, despite other reports of lesser or no substance abuse. (Tr. 31, 311.) Plaintiff also reported he was kicked out of school for dropping his principal over a balcony. (Tr. 31, 311.) None of these facts are reported consistently or corroborated by other records, so to the extent they are part of the basis of Dr. Schulz's opinion, the ALJ reasonably rejected Dr. Schulz's conclusions.

With respect to Ms. Vaagan's and Ms. Baker's opinions, the ALJ summarized the contents and assigned "some weight" to them. (Tr. 30-31.) The ALJ observed Ms. Vaagan and Ms. Baker are not acceptable medical sources under the regulations, and their opinions are

therefore entitled to "less weight" as a matter of law. (Tr. 31.) Further, the ALJ pointed out the opinions rely on plaintiff's unreliable self-report and contain little or no objective findings. A medical opinion may be rejected if it is based on a claimant′s subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595 (9th Cir. 1999); *Fair*, 885 F.2d at 604. Additionally, the amount of evidence supporting the opinion and the quality of the explanation are relevant factors in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). These reasons are appropriately considered by the ALJ and are supported by substantial evidence. Plaintiff does not address the reasons or point to any error of fact or law in the ALJ's analysis. As a result, there is no error.

### c. Physical Medical Opinion Evidence

Plaintiff asserts the ALJ ignores evidence from treating and consulting physicians but accepts the opinions of doctors who never met the plaintiff. (ECF No. 15 at 18-19.) Plaintiff's primary complaint is that the ALJ rejected the opinion of Dr. Ho, an examining physician, in favor of the opinions of Drs. Wolfe and Kester, state reviewing physicians who did not examine plaintiff. (ECF No. 15 at 18.) Dr. Ho examined plaintiff in October 2010.[4] (Tr. 316-22.) She diagnosed injury of the right knee 6-9 months prior with evaluation by an orthopedist; long history of migraine headaches; history of learning disability and diagnosis of attention deficit hyperactivity disorder as an adult; and anxiety/depression and panic attacks, diagnosed between the ages of 13-15 with no treatment. (Tr. 310.) Dr. Ho also noted plaintiff reported having been in the military in Iraq and was diagnosed with sleep disorder and PTSD. (Tr. 320.) Dr. Ho found that in an eight-hour workday, plaintiff is limited to standing and walking less than two hours at one time; standing and walking for at least two hours but less than six hours; and sitting at least two hours but less than six hours at one time without interruption. Dr. Ho also found lifting and carrying are limited to 20 pounds occasionally and ten pound frequently, and postural activities of climbing, kneeling, crouching and stooping should be avoided. (Tr. 321.)

---

[4] Dr. Ho also examined plaintiff in 2008. (Tr. 111.) The 2008 exam report is not in the record, but Dr. Kester summarized Dr. Ho's 2008 opinion. (Tr. 111.) Dr. Ho considered the same conditions currently at issue except for right knee pain due to a more recent injury. (Tr. 111.) Dr. Ho assessed limitations consistent with light work in 2008. (Tr. 111.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and are consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Contrary to plaintiff's assertion that the ALJ "ignores" Dr. Ho's opinion (ECF No. 15 at 18), the ALJ gave "some weight" to Dr. Ho's findings "due to her opportunity to examine the claimant and the general consistency of the opinion with the objective medical evidence and the entire medical record as described in this decision." (Tr. 28.) Plaintiff points to no limitations assessed by Dr. Ho which are not reasonably accounted for in the RFC and the ALJ's other findings. Thus, the ALJ did not improperly reject Dr. Ho's opinion in favor of the opinions of nonexamining physicians.

Plaintiff also finds fault with the ALJ for "the rather remarkable statement" (ECF No. 15 at 18) that she gave significant weight to the opinion of Dr. Wolfe, the state reviewing physician, "because of his opportunity to observe the many inconsistencies and exaggerations of the claimant that were not observed by independent treating and evaluating medical providers." (Tr. 28.) Dr. Wolfe pointed out several inconsistencies in plaintiff's statements as reported to various providers throughout the record. (Tr. 114.) Dr. Wolfe pointed out plaintiff told Dr. Ho he had served in Iraq, although he would have been disqualified from military service due to his reported eighth grade education. (Tr. 114.) Dr. Wolfe noted plaintiff alleges migraine headaches two times per month for 15 years (Tr. 317), but that allegation had not been made previously. (Tr. 114.) Thus, Dr. Wolfe concluded Dr. Ho's evaluation is "tainted by subjectivity and sympathy" based on objective evidence in Dr. Ho's report and her final conclusions. (Tr. 115.)

Dr. Wolfe also considered other factors, such as plaintiff's activities of daily living, his mental status exam, and participation in social events. (Tr. 114-15.) It is neither remarkable nor impermissible for the ALJ to note that Dr. Wolfe observed and pointed out inconsistencies in the record. A physical examination is not required to observe that there are inconsistent statements in the record, and it was appropriate for the ALJ to cite Dr. Wolfe's observation of inconsistencies.

Plaintiff also mentions the findings of Edward Liu, ARNP, and asserts the ALJ "ignores" his opinion. (ECF No. 15 at 17-18.) The ALJ addressed Mr. Liu's exams and findings in detail and listed several reasons for giving less weight to the opinion. (Tr. 28-29.) As plaintiff has failed to address or discuss the ALJ detailed findings and makes only the same general arguments made regarding Dr. Ho's opinion, and because plaintiff failed to cite any supporting authority for those arguments, the court declines to further address this issue. *See Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error. On remand, the ALJ should develop the psychological record and obtain cognitive testing. The ALJ should also reconsider the opinion of the psychological medical expert and obtain additional expert testimony if necessary. Further, the ALJ should make clear the basis for rejecting or adopting limitations identified in the psychological opinion evidence.

. **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 15)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment **(ECF No. 17)** is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED December 10, 2014

                      *s/ Fred Van Sickle*
                        Fred Van Sickle
            Senior United States District Judge